# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

DAVID L. GILLILAND, in his capacity as
Trustee of the David L. Gilliland Revocable
Trust,

      Plaintiff,

vs.                                                                                    No. CIV 24-0065 JB/KRS

DR. RAMMOHAN VENEPALLY and
EUGENE SAMUEL,

        Defendants.

and

DR. RAMMOHAN VENEPALLY and
EUGENE SAMUEL,

      Cross-Claimants,

vs.

ROBERT WILTSHIRE,

      Cross-Claim Defendant.

## <u>MEMORANDUM OPINION</u>[1]

    **THIS MATTER** comes before the Court on: (i) the Plaintiff's Motion for Judgment on the Pleadings or, In the Alternative, For Summary Judgment, filed April 10, 2024 (Doc. 10)("Rule 12(c) Motion"); and (ii) Defendants/Cross-Claimants' Motion to Disqualify Counsel for Plaintiff and Cross-Defendants, filed August 2, 2024 (Doc. 22)("Disqualification Motion"). The Court held

---

[1]On March 11, 2025, the Court entered an Order (Doc. 50), granting the Plaintiff's Motion for Judgment on the Pleadings or, In the Alternative, For Summary Judgment, filed April 10, 2024 (Doc. 10), and denying the Defendants/Cross-Claimants' Motion to Disqualify Counsel for Plaintiff and Cross-Defendants, filed August 2, 2024 (Doc. 22). <u>See</u> Order at 1. The Court states in the Order that it will "issue . . . a Memorandum Opinion at a later date more fully detailing its rationale for this decision." Order at 1 n.1. This Memorandum Opinion is the promised opinion.

a hearing on October 18, 2024. See Clerk's Minutes at 1, filed October 18, 2024 (Doc. 37). The primary issues are: (i) whether the Court should disqualify David R. Baake from representing the Plaintiff David Gilliland, when Mr. Baake also represents Robert Wiltshire, a signatory to the promissory note and the Cross-Claim Defendant in this litigation, and this representation, according to the Defendants, is a non-consentable conflict of interest; and (ii) whether Gilliland is entitled to summary judgment, when the undisputed material facts show that the Defendants: (a) sign a promissory note borrowing $350,000.00 from the David L. Gilliland Revocable Trust ("the Trust"), (b) do not make payments pursuant to their obligations under the promissory note, and (c) do not respond to Gilliland's notice that he is exercising his contractual right to accelerate the debt. The Court concludes that: (i) Mr. Baake may continue to serve as Gilliland's and Wiltshire's attorney, because he has obtained conflict waivers from both of his clients; and (ii) Gilliland is entitled to summary judgment, because: (a) he supports his statement of undisputed facts with record evidence, and the Defendants do not support the facts they purport to dispute with record evidence; and (b) the Defendants do not comply with rule 56(d) of the Federal Rules of Civil Procedure's requirement to support their request for additional discovery with an affidavit or declaration. Accordingly, the Court denies the Disqualification Motion and grants the Rule 12(c) Motion.

## FACTUAL BACKGROUND

The Court begins by making findings of fact pertaining to the Disqualification Motion. Then, it states the undisputed material facts for summary judgment purposes.

### 1. **Findings of Fact About the Disqualification Motion.**

1.     Mr. Baake is an attorney practicing in Las Cruces, New Mexico. See Email from David Baake to Raul Carrillo at 1 (dated July 25, 2024), filed August 16, 2024 (Doc. 23-9)

("Baake/Carrillo Email").

2.      Mr. Baake did not draft any of the contracts at issue in this case.  <u>See</u> Baake/Carrillo Email at 1.

3.      Mr. Baake did not negotiate any of the contracts at issue in this case.  <u>See</u> Baake/Carrillo Email at 1.

4.      Mr. Baake represents Wiltshire and Gilliland pursuant to a joint representation agreement.  <u>See</u> Response in Opposition to Motion to Disqualify Counsel at 5, filed August 16, 2024 (Doc. 23)("Disqualification Response").

5.      Mr. Baake has obtained conflict-of-interest waivers from Wilshire and Gilliland. <u>See</u> Draft Transcript of Hearing at 53:11-13 (taken October 18, 2024)(Baake)("Tr.").[2]

### 2.      <u>Undisputed Material Facts.</u>[3]

As an initial matter, the Court converts the Rule 12(c) Motion into a summary judgment motion.  Conversion is appropriate here under rule 12(d) for two reasons.  First, Gilliland attaches "matters outside the pleadings" to his motion, Fed. R. Civ. P. 12(d), and he asks the Court to convert his motion to a summary judgment motion if the Court considers the attached materials, <u>see</u> Rule 12(c) Motion at 2.  Second, Defendants Rammohan Venepally and Eugene Samuel state:

---

[2]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

[3]The Rule 12(c) Motion does not contain an undisputed-material-facts section, as D.N.M.LR-Civ. 56.1(b) requires, so the Court takes the Plaintiff's version of the facts as the moving party from the section in the Rule 12(c) Motion entitled: "To the Extent the Court Deems it Necessary to Look Beyond the Pleadings, the Gilliland Declaration Establishes that Summary Judgment Is Proper."  Rule 12(c) Motion at 10.  The Defendants, however, include a disputed-material-facts section in their Rule 12(c) Response, as D.N.M.LR-Civ. 56.1(b) requires, so the Court takes their version of the facts from that section.  <u>See</u> Rule 12(c) Response at 6.

"Defendants respectfully request this Court to apply the summary judgment standard under Rule 1-056 [sic] and deny" the Rule 12(c) Motion.[4]  Defendants' Response to Plaintiff's Motion for Judgment on the Pleadings or, In the Alternative, For Summary Judgment at 3, filed April 29, 2024 (Doc. 15)("Rule 12(c) Response").  Both parties, therefore, request that Court convert the Rule 12(c) Motion into a summary judgment motion.  Accordingly, the Court applies the summary judgment standard to resolve the Rule 12(c) Motion.  See Alexander v. Oklahoma, 382 F.3d 1206, 1214 (10th Cir. 2004)("We find such a conversion permissible here because Plaintiffs were both on notice of the possibility of conversion and provided their own affidavit to the District Court . . . .").

The Court draws the factual background from the parties' undisputed material facts in their briefs.  Undisputed facts go above-the-line, in the text.  The Court discusses facts that are purportedly disputed or actually disputed in the footnotes.

Dr. Venepally and Eugene Samuel execute a Secured Promissory Note in the Trust's favor.

---

[4]In the Rule 12(c) Response's next sentence, the Defendants state, however, "the Court should summarily deny Plaintiff's Motion because it is premature, and the introduction of facts by the Plaintiff converts the proposed analysis to one for summary judgment, which is inappropriate at this stage of the proceedings given the lack of discovery."  Rule 12(c) Response at 3.  This sentence is not consistent with the Defendants' preceding sentence, which asks the Court to apply the summary judgment standard and deny the Rule 12(c) Motion.  Nonetheless, conversion remains warranted here.  First, the Defendants attach exhibits to their Rule 12(c) Response, and the United States Court of Appeals for the Tenth Circuit explains that, when a non-movant submits "material beyond the pleadings in opposition to defendants' motion, he is scarcely in a position to claim unfair surprise or inequity."  Arnold v. Air Midwest, Inc., 100 F.3d 857, 859 n.2 (10th Cir. 1996).  Second, the Court applies the summary judgment standard in its March 11, 2025, Order granting the Rule 12(c) Motion.  See Order at 2.  The March 11, 2025, Order put the Defendants on notice how the Court is analyzing the Rule 12(c) Motion, and the Defendants have had several months to ask the Court to reconsider applying the summary judgment standard.  They have not done so.  Because both parties have been on notice for months that the Court is converting the Rule 12(c) Motion, the Court applies the summary judgment standard in this Memorandum Opinion pursuant to rule 12(d) of the Federal Rules of Civil Procedure.

See Rule 12(c) Motion at 11 (asserting this fact); Rule 12(c) Response at 6 (admitting this fact); Declaration of David L. Gilliland ¶ 3, at 1 (dated April 10, 2024), filed April 10, 2024 (Doc. 10-1)("Gilliland Decl."). "Gilliland executed the Note on behalf of the trust . . . ." Rule 12(c) Motion at 11 (asserting this fact). See Rule 12(c) Response at 6 (admitting this fact); Gilliland Decl. ¶ 4, at 2. "The copy of the Note attached to the Complaint[ for Damages, filed January 18, 2024 (Doc. 1)("Complaint"),] is true and correct." Rule 12(c) Motion at 11 (asserting this fact). See Rule 12(c) Response at 6 (admitting this fact); Gilliland Decl. ¶ 3, at 1-2.

"Gilliland caused the Trust to make disbursements pursuant to the Note." Rule 12(c) Motion at 11 (asserting this fact). See Gilliland Decl. ¶ 5, at 2.[5] "The Trust has performed all of its obligations under the Note or has been excused from performing." Rule 12(c) Motion at 11 (asserting this fact). See Gilliland Decl. ¶¶ 5-6, at 2.[6] "The Trust has not received any payment under the Note, from Defendants, Wiltshire, or anyone else." Rule 12(c) Motion at 11 (asserting this fact). See Gilliland Dec. ¶ 8, at 2.[7]

---

[5]The Defendants purport to dispute this fact -- they "deny that the Trust made disbursements in the amount of $350,000.00," Rule 12(c) Response at 6 -- but they do not cite any record evidence in support of their position. Accordingly, the Court deems this fact undisputed. See D.N.M.LR-Civ. 56.1(b)("Each fact in dispute must be numbered, must refer with particularity to those portions of the record upon which the non-movant relies, and must state the number of the movant's fact that is disputed.").

[6]The Defendants purport to dispute this fact -- they "deny that the trust has performed all of its obligations under the Note," Rule 12(c) Response at 6 -- but they do not cite any record evidence in support of their position. Accordingly, the Court deems this fact undisputed. See D.N.M.LR-Civ. 56.1(b)("Each fact in dispute must be numbered, must refer with particularity to those portions of the record upon which the non-movant relies, and must state the number of the movant's fact that is disputed.").

[7]The Defendants purport to dispute this fact -- they "deny that the Trust has not received any payment under the Note," Rule 12(c) Response at 6 -- but they do not cite any record evidence in support of their position. Accordingly, the Court deems this fact undisputed. See D.N.M.LR-Civ. 56.1 ("Each fact in dispute must be numbered, must refer with particularity to those portions

"Gilliland's attorney sent a Notice of Default under Secured Promissory Note ('Notice') to Defendants' Attorney on October 31, 2023." Rule 12(c) Motion at 11 (asserting this fact). See Rule 12(c) Response at 6 (stating that "Defendants admit that they received the Notice of Default on October 31, 2023."); Gilliland Decl. ¶, at 3. The Defendants do not respond to the Notice. See Rule 12(c) Motion at 11 (asserting this fact); Rule 12(c) Response at 6 (admitting this fact); Gilliland Decl. ¶ 11, at 3. "As of April 10, 2024, the balance due on the Note is $403,000[.00]." Rule 12(c) Motion at 11 (asserting this fact). See Gilliland Decl. ¶ 12, at 3.[8]

## PROCEDURAL HISTORY

In this section, the Court first summarizes the Rule 12(c) briefing. Then, the Court summarizes the Disqualification Motion briefing. Finally, the Court summarizes the hearing on the two motions.

### 1.    The Rule 12(c) Motion.

The Rule 12(c) Motion asserts that judgment on the pleadings is warranted, because the Defendants' Answer to Plaintiff's Complaint For Damages and Cross Claim Against Robert Wiltshire A/K/A "Chuck" Wiltshire, filed February 20, 2024 (Doc. 7)("Answer"), admits the necessary elements pertaining to enforcement of a promissory note. See Rule 12(c) Motion at 8. According to the Rule 12(c) Motion, the Defendants admit that they signed the Note; they do not

---

of the record upon which the non-movant relies, and must state the number of the movant's fact that is disputed.").

[8]The Defendants purport to dispute this fact -- they "deny that as of April 10, 2024, the balance due on the Note i[s] $403,000.00," Rule 12(c) Response at 6 -- but they do not cite any record evidence in support of their position. Accordingly, the Court deems this fact undisputed. See D.N.M.LR-Civ. 56.1 ("Each fact in dispute must be numbered, must refer with particularity to those portions of the record upon which the non-movant relies, and must state the number of the movant's fact that is disputed.").

allege that they have ever made payments under the Note; and they do not dispute that the Note requires them to make payments.  See Rule 12(c) Motion at 8.  The Rule 12(c) Motion also addresses and attempts to rebut the Defendants legal defenses to the note-enforcement claim.  See Rule 12(c) Motion at 9.  First, the Rule 12(c) Motion contends that the Defendants' subjective understanding that the Note does not impose joint and several liability is "not sufficient to create a genuine dispute of material fact."  Rule 12(c) Motion at 9.  Second, the Rule 12(c) Motion contends that the Defendants' argument that "Gilliland's claim is barred based on his failure to name an indispensable party -- namely, their co-borrower Wiltshire" -- fails, because, under New Mexico law, a plaintiff does not need to sue more than one defendant that the plaintiff contends is jointly and severally liable on a contract.  Rule 12(c) Motion at 9.  Finally, in the Rule 12(c) Motion's final section, Gilliland asserts that summary judgment is also warranted in his favor, because the Gilliland Decl. "confirms the veracity of the key allegations in the Complaint."  Rule 12(c) Motion at 11.

**2.    The Rule 12(c) Response.**

The Rule 12(c) Response first contends that the "Plaintiff's Motion . . . is premature," citing rule 56(f) of the Federal Rules of Civil Procedure.  Rule 12(c) Response at 3.  The Defendants argue that "the depositions of both Robert Wiltshire and David Gilliland are necessary," because discovery may uncover facts that support legal theories that bar Gilliland from enforcing the Note.  Rule 12(c) Response at 7.  The Defendants contend that several aspects of Gilliland's claims require discovery.  See Rule 12(c) Response at 8.  First, the Defendants contend that they believed that Wiltshire was going to pay off the Note.  See Rule 12(c) Response at 8.  Second, the Defendants contend that "the Plaintiff acted in concert with" Wiltshire to "defraud, deceive and lure Defendants into the Security Agreement and Promissory Note."  Rule 12(c) Response at 9.

Third, the Defendants contend that Wiltshire "has claimed in a companion lawsuit that he has made the payments at issue, at least in part . . . ."  Rule 12(c) Response at 9.  Finally, separate from the Defendants' discovery arguments, the Defendants assert that, "due to the exclusion of Robert Wiltshire as a named Defendant, the Plaintiff has failed to include a necessary party in this case."  Rule 12(c) Response at 11.

3.      **The Rule 12(c) Reply.**

The Reply in Support of Motion for Judgment on the Pleadings or, in the Alternative, for Summary Judgment, filed May 6, 2024 (Doc. 18)("Rule 12(c) Reply"), asserts that the "Defendants try to distract from the narrow question at issue . . . by discussing separate claims that exist between the borrowers,"  Rule 12(c) Reply at 3 (emphasis in original).  The Rule 12(c) Reply states that "the dispute between Defendants and Wiltshire has no bearing on whether Defendants are liable to Gilliland under the note they signed in his favor."  Rule 12(c) Reply at 3 (emphasis in original).  The Rule 12(c) Reply also notes that, because the Defendants do not attach an affidavit in support of their rule 56(d) request, that rule does not apply to them.  See Rule 12(c) Reply at 4.

Next, according to Gilliland, "the Defendants cannot create a fact issue by speculating that Gilliland might have received payments on the Note -- notwithstanding the clear allegations in the Complaint (and Gilliland's averment, under penalty of perjury, that he did not receive payment)."  Rule 12(c) Reply at 4 (emphasis in original).  Gilliland argues, moreover, that the Defendants' contention that they need discovery to explore the legal defense of fraudulent inducement is speculative.  See Rule 12(c) Reply at 5.  Finally, Gilliland responds to the Defendants' argument regarding Wiltshire's State court complaint, and contends that, in that State litigation, Wiltshire explains merely how the parties "could have structured their relationship to ensure that Gilliland was repaid if Defendants had not breached the partnership agreement and sought to evict Wiltshire.

It is not reasonably read as an assertion that Wiltshire <u>did</u> make any payments." Rule 12(c) Reply at 7 (emphasis in original).

4.    **The Disqualification Motion**.

The Disqualification Motion argues that Mr. Baake, Gilliland's attorney, "has a concurrent, non-consentable conflict of interest . . . because he also represents David Wiltshire, personally, in this and other litigation." Disqualification Motion at 1. According to the Defendants, the conflict stems from Mr. Baake's representation of "the lender, and an obligated debtor on the same transaction. He is both trying to collect for his client, and defend against the collection effort." Disqualification Motion at 2. Moreover, the Defendants assert that Mr. Baake is "likely to be a necessary witness, a factor that further supports disqualification." Disqualification Motion at 2. The Disqualification Motion asserts that, "[a]lthough Wiltshire never made any payment on the Note, and defaulted on the Lease . . . Baake continues to assert that Wiltshire has no liability to the Trust, or the Defendants, although Wiltshire's joint and several liability necessary [sic] benefits the Trust." Disqualification Motion at 4.

Mr. Baake, contends the Defendants, "would need the consent of Wiltshire to add him as a Defendant herein, or the consent of the Trustee not to include Wiltshire, <u>if</u> the conflict was consentable." Disqualification Motion at 5 (emphasis in original). The Defendants contend, however, that the conflict is not consentable. <u>See</u> Disqualification Motion at 6. They appear to argue that the conflict is non-consentable, because "the clients are aligned directly against each other in the same litigation." Disqualification Motion at 8. Finally, the Defendants argue that Mr. Baake's "testimony would be unique, and central to the Court's central role: deciding what the material terms agreements [sic] were between Wiltshire and the Defendants, and who is primarily liable to the Trust." Disqualification Motion at 9.

5. **The Disqualification Motion Response**.

The Disqualification Response makes several assertions. First, it asserts that the Defendants do not have standing to disqualify Gilliland's counsel. <u>See</u> Disqualification Response at 3. Second, it asserts that there is no conflict of interest between the Trust and Wiltshire, because they are friends, and the Defendants' breach of contract harmed both of them. <u>See</u> Disqualification Response at 3. Moreover, the Disqualification Response declares that Gilliland and Wiltshire share the same counsel, "<u>because</u> they wish to cooperate in this litigation." Disqualification Response at 3 (emphasis in original). Third, Gilliland asserts that the Defendants have not suffered prejudice as a result of "Gilliland's decision to cooperate with Wiltshire." Disqualification Response at 4. Finally, Gilliland asserts that, because Mr. Baake did not participate in drafting or negotiating the contracts at issue, he is not going to be a witness in this litigation. <u>See</u> Disqualification Response at 4.

6. **The Disqualification Reply**.

The Defendants/Cross-Claimants' Reply in Support of Motion to Disqualify Counsel for Plaintiff and Cross-Defendants, filed August 30, 2024 (Doc. 24)("Disqualification Reply"), asserts that "[t]his case transcends a purely private dispute and implicates broader public interests," specifically, the public's confidence in the judicial process. Disqualification Reply at 4. The Disqualification Reply then contends that, because Mr. Baake's "obligation is to ensure that the Trust maximizes its recovery," his "role is fundamentally compromised. He has displayed a lack of advocacy for the Trust by failing to pursue all available remedies to address Mr. Wiltshire's fraudulent conduct." Disqualification Reply at 5. Finally, the Disqualification Reply doubles down on its assertion that Mr. Baake could be a necessary witness. <u>See</u> Disqualification Reply at 6.

7.    **The Hearing**.

At the hearing, Gilliland explains that, because the parties to the note are jointly and severally liable, "the plaintiff is free to pursue whoever the plaintiff wants to in that case." Tr. at 58:18-19 (Baake). In response, the Defendants state that Baake's argument "does not account for problems with the formation of the promissory note, potential fraud that occurred during the formation period and misrepresentation by the parties to the promissory note." Tr. at 8:3-9 (Carrillo). The Defendants contend, moreover, that "we have a discoverable question about whether or not all parties came to a meeting of the minds with regard to the operation of the note." Tr. at 8:9-111 (Carrillo). The Defendants agree, moreover, that they want the Court to treat the Rule 12(c) Motion as a summary judgment motion. See Tr. at 9:24-10:3 (Carrillo). The Defendants state, furthermore, that "they deny entirely almost every single paragraph of the existing complaint so we do have a factual issue that I think is ripe for discovery." Tr. at 34:4-9 (Carrillo). Gilliland responds, however, by arguing that the Gilliland Decl. "is the only actual evidentiary submission in the record relating to summary judgment." Tr. at 38:3-4 (Baake).

As to the Disqualification Motion, the Defendants contend that Mr. Baake is "in a position where he would have to pursue recovery of funds from Mr. Wiltshire on behalf of Mr. Gilliland and defendant against recovery from Mr. Gilliland on behalf of Mr. Wiltshire on the same proceeding," which the Defendants maintain is an "irreconcilable" conflict. Tr. at 49:1-8 (Carrillo). The Defendants also concede that "Mr. Baake is right, he can sue any one of the joint and severally liable parties," and "force them to sue each other to sort things out." Tr. at 52:3-6 (Carrillo). In response, Gilliland represents that "of course I obtained a conflict waiver" from the two clients when Mr. Baake "met them both face-to-face" in the "country club in Las Cruces." Tr. at 53:6-13 (Baake). Gilliland also represents that it is "simply untrue" that Mr. Baake was involved

in drafting the promissory note; he was "retained by these clients last year as litigation counsel."

Tr. at 56:6-15 (Baake).

## LAW REGARDING MOTIONS TO DISQUALIFY AND THE NEW MEXICO RULES OF PROFESSIONAL CONDUCT

Two sources of authority govern motions to disqualify:

First, attorneys are bound by the local rules of the court in which they appear. Federal district courts usually adopt the Rules of Professional Conduct of the states where they are situated. Second, because motions to disqualify counsel in federal proceedings are substantive motions affecting the rights of the parties, they are decided by applying standards developed under federal law. Therefore, motions to disqualify are governed by the ethical rules announced by the national profession and considered by the ethical rules announced by the national profession and considered in light of the public interest and the litigants' rights.

Cole v. Ruidoso Mun. Schs., 43 F.3d 1373, 1383 (10th Cir. 1994)(citations and internal quotation marks omitted). The local rules for the United States District Court for the District of New Mexico state: "The Rules of Professional Conduct adopted by the Supreme Court of the State of New Mexico apply except as otherwise provided by local rule or by Court Order." D.N.M. LR-Civ. 83.9. "The New Mexico Rules were patterned after the [American Bar Association's] Model Rules of Professional Conduct -- the rules which . . . reflect the national standard to be used in ruling on disqualification motions," Cole v. Ruidoso Mun. Schs., 43 F.3d at 83, and the New Mexico Rules at issue do not differ from their counterparts in the ABA's Model Rules, compare Rule 16-107 N.M.R.A. with ABA Model Rule 1.7; compare Rule 16-307(A) N.M.R.A. with ABA Model Rule 3.7.

Rule 16-107 of the New Mexico Rules of Professional Conduct states:

> **A.    Representation Involving Concurrent Conflict of Interest.** Except as provided in Paragraph B of this rule, a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

      (1)    the representation of one client will be directly adverse to another client; or

      (2)    there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

      **B.**    **Permissible Representation When Concurrent Conflict Exists.** Notwithstanding the existence of a concurrent conflict of interest under Paragraph A of this rule, a lawyer may represent a client if:

      (1)    the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

      (2)    the representation is not prohibited by law;

      (3)    the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and

      (4)    each affected client gives informed consent, confirmed in writing.

Rule 16-107 N.M.R.A.

      Rule 16-307 of the New Mexico Rules of Professional Conduct states:

      A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:

      (1)    the testimony relates to an uncontested issue;

      (2)    the testimony relates to the nature and value of legal services rendered in the case; or

      (3)    disqualification of the lawyer would work substantial hardship on the client.

Rule 16-307(A) N.M.R.A.  The Committee Commentary elaborates on subparagraph (3) of rule

16-307 of the New Mexico Rules of Professional Conduct.  It states:

Subparagraph (3) of Paragraph A recognizes that a balancing is required between the interests of the client and those of the tribunal and the opposing party. Whether the tribunal is likely to be misled or the opposing party is likely to suffer prejudice depends on the nature of the case, the importance and probable tenor of the lawyer's testimony and the probability that the lawyer's testimony will conflict with that of other witnesses. Even if there is risk of such prejudice, in determining whether the lawyer should be disqualified due regard must be given to the effect of disqualification on the lawyer's client. It is relevant that one or both parties could reasonably foresee that the lawyer would probably be a witness.

Rule 16-307(A) N.M.R.A. Committee Commentary.

## LAW REGARDING JUDGMENT ON THE PLEADINGS

"After the pleadings are closed -- but early enough not to delay trial -- a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A "[j]udgment on the pleadings should not be granted 'unless the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law.'" Park Univ. Enters., Inc. v. Am. Cas. Co. of Reading, 442 F.3d 1239, 1244 (10th Cir. 2006)(quoting United States v. Any & All Radio Station Transmission Equip., 207 F.3d 458, 462 (8th Cir. 2000)). The same standards for evaluating a 12(b)(6) motion apply to a motion for a judgment on the pleadings. See Atlantic Richfield Co. v. Farm Credit Bank of Wichita, 226 F.3d at 1160 ("A motion for judgment on the pleadings under Rule 12(c) is treated as a motion to dismiss under rule 12(b)(6)."). Thus, a court accepts "all facts pleaded by the non-moving party as true and grants all reasonable inferences from the pleadings in that party's favor." Sanders v. Mountain Am. Fed. Credit Union, 689 F.3d at 1141. All of the nonmoving parties' allegations are deemed true, and all of the movants' contrary assertions are deemed false. See Nat'l Metro. Bank v. United States, 323 U.S. 454, 456-57 (1945); Ramirez v. Dep't of Corr., 222 F.3d 1238, 1240 (10th Cir. 2000); Freeman v. Dep't of Corr., 949 F.2d 360, 361 (10th Cir. 1991).

Under rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon

which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." Mobley v. McCormick, 40 F.3d at 340. A complaint that faces a rule 12(b)(6) motion to dismiss does not require detailed factual allegations, but a plaintiff's obligation to set forth the grounds of his or her entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. at 555. A plaintiff must "nudge his claims across the line from conceivable to plausible" to survive a motion to dismiss. Bell Atl. Corp. v. Twombly, 550 U.S. at 570. "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." Ridge at Red Hawk, LLC v. Schneider, 493 F.3d at 1177. The Tenth Circuit states:

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible." The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

> This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them. "Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." See Airborne Beepers & Video, Inc. v. AT&T Mobility LLC, 499 F.3d 663, 667 (7th Cir. 2007)("[A]t some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8."). The Twombly Court was particularly critical of complaints that "mentioned no specific time, place, or person involved in the alleged conspiracies."

n.10. Given such a complaint, "a defendant seeking to respond to plaintiffs' conclusory allegations . . . would have little idea where to begin." Id.

Robbins v. Oklahoma, 519 F.3d at 1247-48.

## LAW REGARDING SUMMARY JUDGMENT

Rule 56(a) of the Federal Rules of Civil Procedure states: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the initial burden of 'show[ing] that there is an absence of evidence to support the nonmoving party's case.'" Herrera v. Santa Fe Pub. Schs., 956 F. Supp. 2d 1191, 1221 (D.N.M. 2013)(Browning, J.)(quoting Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991)(alteration in Herrera v. Santa Fe Pub. Schs.)). See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)("Celotex").

> Before the court can rule on a party's motion for summary judgment, the moving party must satisfy its burden of production in one of two ways: by putting evidence into the record that affirmatively disproves an element of the nonmoving party's case, or by directing the court's attention to the fact that the non-moving party lacks evidence on an element of its claim, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323-25. On those issues for which it bears the burden of proof at trial, the nonmovant "must go beyond the pleadings and designate specific facts to make a showing sufficient to establish the existence of an element essential to his case in order to survive summary judgment." Cardoso v. Calbone, 490 F.3d 1194, 1197 (10th Cir. 2007)(internal quotations and brackets omitted).

Plustwik v. Voss of Nor. ASA, No. 11-0757, 2013 WL 1945082, at *1 (D. Utah May 9, 2013)(Sam, J.)(emphasis added). "If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence -- using any of the materials specified in Rule 56(c) -- that would entitle it to a directed verdict if not controverted at trial." Celotex, 477

U.S. at 331 (Brennan, J., dissenting)(emphasis in original).[9]  Once the movant meets this burden,

rule 56 requires the nonmoving party to designate specific facts showing that there is a genuine

issue for trial.  See Celotex, 477 U.S. at 324; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256

(1986)("Liberty Lobby").  In American Mechanical Solutions, LLC v. Northland Piping, Inc., 184

F. 3d 1030 (D.N.M. 2016)(Browning, J.), the Court granted summary judgment for the defendant

when the plaintiff did not offer expert evidence supporting causation or proximate causation in its

breach-of-contract or breach-of-the-implied-warranty-of-merchantability claims.  See 184 F. 3d at

1075-78.  The Court reasoned that the plaintiff could prove neither the breach-of-contract claim's

causation  requirement  nor  the  breach-of-the-implied-warranty-of-merchantability  claim's

proximate-causation requirement with mere common knowledge, see 184 F. Supp. 3d at 1073, and

so New Mexico law required that the plaintiff bolster its arguments with expert testimony, see 184

F. Supp. 3d at 1067, which the plaintiff had not provided, see 184 F. Supp. 3d at 1075.  The Court

determined that, without the requisite evidence, the plaintiff failed to prove "an essential element

of the nonmoving party's case . . . render[ing] all other facts immaterial."  Am. Mech. Sol., LLC

v. Northland Piping, Inc., 184 F. Supp. 3d at 1075 (quoting Plustwik v. Voss of Nor. ASA, No.

11-00757, 2013 WL 1945082, at *1 (D. Utah 2013)(Sam, J.)).

Thus, if a plaintiff has the burden of proof, and the plaintiff has no competent evidence,

the defendant, even without any competent evidence itself, may secure summary judgment by

---

[9]Although the Honorable William J. Brennan, Jr., then-Associate Justice of the Supreme
Court, dissented in Celotex, this sentence is widely understood to be an accurate statement of the
law.  See 10A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2727, at
470 (3d ed. 1998)("Although the Court issued a five-to-four decision, the majority and dissent
both agreed as to how the summary-judgment burden of proof operates; they disagreed as to how
the standard was applied to the facts of the case.").

pointing out the plaintiff's lack of competent evidence. See Celotex, 477 U.S. at 323-25 (providing that summary judgment is proper where a plaintiff lacks evidence on an essential element of its case); Am. Mech. Sols., LLC v. Northland Piping, Inc., 184 F. Supp. 3d at 1075 (granting summary judgment because plaintiff lacked evidence on causation); Morales v. E.D. Entyre & Co., 382 F. Supp. 2d 1252, 1272 (D.N.M. 2005)(Browning, J.)(granting summary judgment because plaintiff lacked competent evidence that the defendants defectively manufactured an oil distributor). A conclusory assertion that the plaintiff lacks evidence is insufficient, however, to secure summary judgment; the defendant must make some evidentiary showing that the plaintiff lacks competent evidence. See Halley v. Huckaby, 902 F.3d 1136, 1143 (10th Cir. 2018)(stating that summary judgment may be warranted if the movant notes a lack of evidence for an essential element of the claim). See also 11 James Wm. Moore et al., Moore's Federal Practice § 56.40[1][b][iv], at 56-109 to -111 (3d ed. 2018).

The party opposing a motion for summary judgment must "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990). See Vitkus v. Beatrice Co., 11 F.3d 1535, 1539 (10th Cir. 1993)("However, the nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." (citing Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d at 1241)). Rule 56(c)(1) provides: "A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ." Fed. R.

Civ. P. 56(c)(1)(A).  It is not enough for the party opposing a properly supported motion for summary judgment to "rest on mere allegations or denials of his pleadings." Liberty Lobby, 477 U.S. at 259.  See Abercrombie v. City of Catoosa, 896 F.2d 1228, 1231 (10th Cir. 1990); Otteson v. United States, 622 F.2d 516, 519 (10th Cir. 1980)("[O]nce a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried."  (quoting Coleman v. Darden, 595 F.2d 533, 536 (10th Cir. 1979)).

A party cannot "avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation." Colony Nat'l Ins. v. Omer, No. 07-2123, 2008 WL 2309005, at *1 (D. Kan. June 2, 2008)(Robinson, J.)(citing Fed. R. Civ. P. 56(e); Argo v. Blue Cross & Blue Shield of Kan., Inc., 452 F.3d 1193, 1199 (10th Cir. 2006)(McConnell, J.)).  "In responding to a motion for summary judgment, 'a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial.'" Colony Nat'l Ins. v. Omer, No. 07-2123-JAR, 2008 WL 2309005, at *1 (D. Kan. June 2, 2008)(quoting Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988)).  To deny a motion for summary judgment, genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Liberty Lobby, 477 U.S. at 250.  A mere "scintilla" of evidence will not avoid summary judgment. Vitkus v. Beatrice Co., 11 F.3d at 1539 (citing Liberty Lobby, 477 U.S. at 248).  Rather, there must be sufficient evidence on which the fact finder could reasonably find for the nonmoving party. See Liberty Lobby, 477 U.S. at 251 (quoting Schuylkill & Dauphin Improvement Co. v. Munson, 81 U.S. (14 Wall.) 442, 448 (1871)("Schuylkill")); Vitkus v. Beatrice Co., 11 F.3d at 1539.

[T]here is no issue for trial unless there is sufficient evidence favoring the

> nonmoving party for a jury to return a verdict for that party. [First Nat. Bank of
> Ariz. v.] Cities Service,[] 391 U.S. [253], 288-[89] . . . . If the evidence is merely
> colorable, Dombrowski v. Eastland, 387 U.S. 82, 87 . . . (per curiam), or is not
> significantly probative, Cities Service, . . . at 290 . . . summary judgment may be
> granted.

Liberty Lobby, 477 U.S. at 249. Where a rational trier of fact, considering the record as a whole, cannot find for the nonmoving party, "there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)(quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).

When reviewing a motion for summary judgment, the court should keep in mind certain principles. First, the court's role is not to weigh the evidence but to assess the threshold issue whether a genuine issue exists as to material facts requiring a trial. See Liberty Lobby, 477 U.S. at 249. Second, the ultimate standard of proof is relevant for purposes of ruling on a summary judgment, such that, when ruling on a summary judgment motion, the court must "bear in mind the actual quantum and quality of proof necessary to support liability." Liberty Lobby, 477 U.S. at 254. Third, the court must resolve all reasonable inferences and doubts in the nonmoving party's favor and construe all evidence in the light most favorable to the nonmoving party. See Hunt v. Cromartie, 526 U.S. 541, 550-55 (1999); Liberty Lobby, 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970)); Tolan v. Cotton, 572 U.S. 650, 651 (2014). Fourth, the court cannot decide any credibility issues. See Liberty Lobby, 477 U.S. at 255.

There are, however, limited circumstances in which the court may disregard a party's version of the facts. In Scott v. Harris, 550 U.S. 372, the United States Supreme Court concludes

that summary judgment is appropriate where video evidence clearly contradicted the plaintiff's version of the facts. See 550 U.S. at 378-81. The Supreme Court explains:

> At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. Fed. Rule Civ. Proc. 56(c). As we have emphasized, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. [at] 586-587 . . . (footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. [at] 247-248 . . . . When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.
>
> That was the case here with regard to the factual issue whether respondent was driving in such fashion as to endanger human life. Respondent's version of events is so utterly discredited by the record that no reasonable jury could have believed him. The Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape.

Scott v. Harris, 550 U.S. at 380-81 (alterations in Scott v. Harris)(emphasis in Liberty Lobby).

The Tenth Circuit applies this doctrine in Thomson v. Salt Lake County, 584 F.3d 1304 (10th Cir. 2009), and explains:

> [B]ecause at summary judgment we are beyond the pleading phase of the litigation, a plaintiff's version of the facts must find support in the record: more specifically, "[a]s with any motion for summary judgment, '[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts[.]'" York v. City of Las Cruces, 523 F.3d 1205, 1210 (10th Cir. 2008)(quoting Scott, 550 U.S. at 380); see also Estate of Larsen ex rel. Sturdivan v. Murr, 511 F.3d 1255, 1258 (10th Cir. 2008).

Thomson v. Salt Lake Cty., 584 F.3d at 1312 (second alteration in Thomson v. Salt Lake Cty., third and fourth alterations in York v. City of Las Cruces). "The Tenth Circuit, in Rhoads v. Miller,

[352 F. App'x 289 (10th Cir. 2009),] explained that the blatant contradictions of the record must be supported by more than other witnesses' testimony." <u>Lymon v. Aramark Corp.</u>, 728 F. Supp. 2d 1222, 1249 (D.N.M. 2010)(Browning, J.), <u>aff'd</u>, 499 F. App'x 771 (10th Cir. 2012).

Parties may allege new claims in motions for summary judgment.  <u>See</u> <u>Evans v. McDonald's Corp.</u>, 936 F.2d 1087, 1090-91 (10th Cir. 1991).  When a party raises a new claim in a motion for summary judgment, a court treats the motion for summary judgment as a request to amend the complaint pursuant to rule 15 of the Federal Rules of Civil Procedure.  <u>See</u> <u>Viernow v. Euripides Dev. Corp.</u>, 157 F.3d 790 n.9 (10th Cir. 1998).  The Tenth Circuit states:

> [A]s a general rule, a plaintiff should not be prevented from pursuing a valid claim just because she did not set forth in the complaint a theory on which she could recover, "provided always that a late shift in the thrust of the case will not prejudice the other party in maintaining his defense upon the merits."

<u>Evans v. McDonald's Corp.</u>, 936 F.2d at 1090-91 (quoting 4 Charles A. Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1219, at 94 (4th ed. 2021)("Wright & Miller")).  While the purpose of "fact pleading" is to give defendants fair notice of claims against them "without requiring the plaintiff to have every legal theory or fact developed in detail before the complaint is filed and the parties have opportunity for discovery," plaintiffs may not "wait until the last minute to ascertain and refine the theories on which they intend to build their case."  <u>Evans v. McDonald's Corp.</u>, 936 F.2d at 1091.

## **ANALYSIS**

The Court denies the Disqualification Motion and grants the Rule 12(c) Motion.  As to the Disqualification Motion, the Court disagrees with the Defendants' argument that Mr. Baake's joint representation of Gilliland and Wiltshire produces a non-consentable conflict.  Applying the New Mexico Rules of Professional Conduct, the Court concludes that there is no conflict, and that, even

if there is a conflict, the clients can, and do, consent to the conflict, because Mr. Baake obtains

conflict waivers from both clients.  The Court also declines to disqualify Mr. Baake on the grounds

that he is purportedly a necessary witness.  Mr. Baake is Gilliland's litigation counsel and did not

draft the underlying agreements.  He does not need to testify in this case.

As to the Rule 12(c) Motion, the Defendants do not attach any record evidence to their

response brief, even though they consent to analyzing the Rule 12(c) Motion under the summary

judgment standard.  Because the Defendants cannot create a factual dispute at summary judgment

here without referring to their own evidence, the undisputed material facts show that Gilliland is

entitled to judgment as a matter of law on his breach-of-contract claim.

I.     **MR. BAAKE'S JOINT REPRESENTATION OF GILLILAND AND WILTSHIRE DOES NOT PRESENT A NON-CONSENTABLE CONFLICT OF INTEREST, AND <u>MR. BAAKE WILL NOT BE A WITNESS IN THIS CASE.</u>**

Mr. Baake's joint representation of Gilliland and Wiltshire does not involve a concurrent

conflict of interest, and, even if there is a conflict, the clients can, and do, consent to the conflict.

The Defendants' argument, in short, is this: (i) Gilliland lends money to Wiltshire, Venepally, and

Samuel, each of whom sign the Note; (ii) Gilliland is now attempting to collect on the Note;

(iii) effective advocacy requires that Mr. Baake assist Gilliland's collection efforts by suing each

of the borrowers, including Wiltshire; and (iv) because Mr. Baake has not sued Wiltshire on

Gilliland's behalf, Mr. Baake is protecting Wilshire to Gilliland's detriment, which demonstrates

the conflict of interest inherent in Mr. Baake's joint representation of Gilliland and Wiltshire.  <u>See</u>

Disqualification Motion at 6-7.  This argument lacks a sound basis in the applicable law and

relevant facts, for three reasons: first, the Defendants do not have standing to bring their

disqualification motion; second, there is no conflict; and third, even if there is a conflict, it is a

conflict to which the clients can, and do, consent.  After the Court addresses these three reasons

- 23 -

the Court briefly addresses and rebuts the Disqualification Motion's second, and even weaker contention, namely, that the advocate-witness rule disqualifies Mr. Baake.

As to the conflict-of-interest allegation, first, Venepally and Samuel lack standing to bring their Disqualification Motion. "'As a general rule, courts do not disqualify an attorney on the grounds of conflict of interest unless the former client moves for disqualification.'" Tapia v. City of Albuquerque, 10 F. Supp. 3d 1171, 1204 (D.N.M. 2014)(Browning, J.)(quoting In re Yarn Processing Patent Validity Litig., 530 F.2d 83, 89 (5th Cir. 1976)). Venepally and Samuel do not contend that they are Mr. Baake's former clients, so the Court could dispose of their Disqualification Motion on these grounds alone. It is easy to see why the former-clients-have-standing rule is a good rule. It prevents gamesmanship, and it does not implicate the attorney-client privilege and the targeted attorney's ethical obligation to maintain client confidences. See Tapia v. City of Albuquerque, 10 F. Supp. 3d at 1205 (discussing the justifications for this rule). Generally, the opposing team does not get to pick the other team's quarterback. Applying this rule is appropriate here, because Disqualification Motion's arguments raise the possibility of gamesmanship. Notwithstanding the Defendants' lack of standing, however, the Court proceeds to the second and third reasons why the motion is not persuasive.

The second reason the motion is not persuasive is that there is no conflict present here. Rule 16-107 of the New Mexico Rules of Professional Conduct describes two types of concurrent conflicts:

>    A.    **Representation Involving Concurrent Conflict of Interest.** Except as provided in Paragraph B of this rule, a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>
>    (1)    the representation of one client will be directly adverse to another client; or

>    (2)    there is a significant risk that the representation of one or
>           more clients will be materially limited by the lawyer's
>           responsibilities to another client, a former client or a third
>           person or by a personal interest of the lawyer.

Rule 16-107 N.M.R.A.[10]  Neither of these conflicts are present here.  Gilliland and Wiltshire are

not adverse to each other.  They are not on opposite sides of the same lawsuit.  In this lawsuit,

Gilliland is the Plaintiff, and Wiltshire was, until recently, a Cross-Defendant, defending against

the Cross-Claimants/Defendants' claims.  See Order of Dismissal Without Prejudice, filed May

14, 2025 (Doc. 54)(dismissing the cross-claims against Wiltshire).  Regarding the second conflict,

there is no "significant risk" that Mr. Baake's representation of Wiltshire will "materially limit[]"

his representation of Gilliland.  Rule 16-107 N.M.R.A.  The Defendants argue that, because

Gilliland's goal is to collect on the Note, he should be suing all the borrowers to collect; they

admit, however, that "Mr. Baake is right, he can sue any one of the joint and severally liable

parties," and "force them to sue each other to sort things out."  Tr. at 52:3-6 (Carrillo).

    The joint-and-several-liability doctrine forecloses a concurrent conflict.  Gilliland has

decided to sue certain signatories to the Note, presumably because he has decided that the

Defendants here are either: (i) wealthier and more likely to be able to satisfy a judgment; or

---

[10]The local rules for the United States District Court for the District of New
Mexico state: "The Rules of Professional Conduct adopted by the Supreme
Court of the State of New Mexico apply except as otherwise provided by local
rule or by Court Order." D.N.M. LR-Civ. 83.9. "The New Mexico Rules were
patterned after the [American Bar Association's] Model Rules of Professional
Conduct -- the rules which . . . reflect the national standard to be used in ruling
on disqualification motions," Cole v. Ruidoso Mun. Schs., 43 F.3d at 1383, and
the New Mexico Rules at issue do not differ from their counterparts in the ABA's
Model Rules, compare Rule 16-107 N.M.R.A. with ABA Model Rule 1.7;
compare Rule 16-307(A) N.M.R.A. with ABA Model Rule 3.7.

Tapia v. City of Albuquerque, 10 F. Supp. 3d at 1202.

(ii) more culpable for the breach of contract and for the business relationship falling apart. Regardless, the rules of professional conduct do not permit Samuel and Venepally to interrogate the decisions underlying Gilliland and Wiltshire's litigation strategy. Samuel and Venepally's "interference" with Gilliland and Wiltshire's relationship with Mr. Baake "is interference with a party's right to counsel of choice." <u>Tapia v. City of Albuquerque</u>, 10 F. Supp. 3d at 1204. In sum, the Disqualification Motion does not identify a sound way in which Mr. Baake's representation of one client materially will limit his representation of his other client in this litigation.

Third, even if there is a concurrent conflict, Mr. Baake may still represent Gilliland and Wiltshire in accordance with the professional-conduct rules, because Mr. Baake represents that his clients have waived the conflict. <u>See</u> <u>supra</u>, at 3. Rule 16-107 allows lawyers to represent clients, despite a conflict:

> **B.    Permissible Representation When Concurrent Conflict Exists.**
> Notwithstanding the existence of a concurrent conflict of interest under Paragraph A of this rule, a lawyer may represent a client if:
>
> (1)    the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
>
> (2)    the representation is not prohibited by law;
>
> (3)    the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
>
> (4)    each affected client gives informed consent, confirmed in writing.

Rule 16-107 N.M.R.A. Theses elements are present here. First, Mr. Baake has not represented that he wishes to withdraw from the representation; presumably, this absence is because he believes that he can continue to represent both clients effectively. Second, the Defendants do not

contend that State law prohibits Mr. Baake's joint representation.  Third, Gilliland and Wiltshire are not on opposite sides of this litigation.  Fourth, Mr. Baake represents that Gilliland and Wiltshire signed conflict waivers.  See supra, at 3.  Accordingly, Rule 16-107 does not mandate Mr. Baake's withdrawal, even if there is a conflict.

Finally, the Defendants contend that Mr. Baake cannot serve as an attorney in this case, because he is "likely to be a necessary witness in the dispute."  Disqualification Motion at 8.  This argument is not sound, because it lacks support in the record.  Mr. Baake emails the Defendants' attorney and informs him that Mr. Baake did not participate in drafting the contracts at issue in this litigation.  See supra, at 3.  According to this representation, therefore, Mr. Baake cannot shed light on "the material terms agreements [sic] . . . between Wiltshire and the Defendants, and who is primarily liable to the trust."  Disqualification Motion at 9.  In light of this representation, there is no reason to anticipate that Mr. Baake is likely to be a necessary witness in this case.  Consequently, the Court denies the Disqualification Motion.

## II.    THE PLAINTIFF IS ENTITLED TO JUDGMENT AS A MATTER OF LAW AS TO HIS BREACH-OF-CONTRACT CLAIM.

There are no genuine disputes about any material facts regarding the elements of Gilliland's breach-of-contract claim; accordingly, Gilliland is entitled to summary judgment.  See Fed. R. Civ. P. 56(a)("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").  Under North Carolina law -- the law that the Note selects pursuant to its choice-of-law clause, see Security Agreement at 8 (executed December 23, 2019), filed January 18, 2024 (Doc. 1-1) -- the elements of a breach-of-contract claim are: (i) "the existence of a valid contract;" and (ii) "breach of the terms of that contract."  BioSignia, Inc. v. Life Line Screening of Am., Ltd., No. 12-CV-1129,

2014 WL 2968139, at *4 (M.D.N.C. July 1, 2014)(citing <u>Guessford v. Pa. Nat. Mut. Cas. Ins. Co.</u>, 918 F. Supp. 2d 453, 460 (M.D.N.C. 2013))(applying North Carolina law).

Gilliland points to the Gilliland Decl. to support his undisputed material facts that establish these elements.  According to the Gilliland Decl., the Defendants "each executed a Secured Promissory Note in favor of the" David L. Gilliland Revocable Trust ("Trust") on December 23, 2019.  Gilliland Decl. ¶ 3, at 1.  Gilliland executed the Note on the Trust's behalf on January 2, 2020.  <u>See</u> Gilliland Decl. ¶ 4, at 2.  While the "Trust made disbursements pursuant to the Note," Gilliland Decl. ¶ 5, at 2, the Trust "has not received any payments under the Note, from Defendants, Wiltshire, or anyone else," Gilliland Decl. ¶ 8, at 2.  On October 31, 2023, Gilliland sent a notice of default to the Defendants' attorney, but did not receive a response or the demanded payment of $395,000.00, the balance owing on the Note at the time of the notice of default's transmission.  <u>See</u> Gilliland Decl. ¶ 9-10, at 2.

As the Court discusses in the Factual Background section, the Defendants purport to dispute some of these facts, but they do not point to record evidence to support their position.  <u>See supra</u>, at 5-6.  The Defendants (i) deny that the Trust made disbursements in the amount of $350,000.00; (ii) deny that the Trust has performed all its obligations under the Note; and (iii) deny that the trust has received payment under the Note.  <u>See supra</u>, at 5-6.  They do not, however, point to any evidence from which the Court could conclude that a jury might accept their version of the facts.  According to the local rules governing summary judgment, the response to a motion for summary judgment "must refer with particularity to those portions of the record upon which the non-movant relies."  D.N.M. LR-Civ. 56.1(b).  <u>See</u> <u>Bell v. City of Tulsa</u>, No. CIV 21-0061 JB/CDL, 2024 WL 1018528, *32 (D.N.M. March 8, 2024)(Browning, J.)("[R]ule 56 requires the nonmoving party to designate specific facts showing that there is a genuine issue for trial.")(citing

Celotext Corp. v. Catrett, 477 U.S. 317, 324 (1986); and Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)), aff'd No. 23-5111, 2025 WL 86956 (10th Cir. Jan. 14, 2025).  Because the Defendants do not support their assertions with record evidence, the Court does not include their assertions as undisputed material facts.  See Sousa v. Chipotle Servs., LLC, No. CIV 23-0811 JB/JFR, 2025 WL 72682, *5 n.23 (D.N.M. Jan. 10, 2025)(Browning, J.)(declining to include the nonmovant's assertion as a material fact, because the nonmovant "does not offer any evidence in support of his assertion")(citing Anderson Living Trust v. ConocoPhillips Co., LLC, 751 F. Supp. 3d 1174, 1183 n.27 (D.N.M. 2024)(Browning, J.), appeal docketed No. 25-2008 (10th Cir. Jan. 24, 2025)).

Accordingly, the undisputed material facts entitle Gilliland to judgment as a matter of law on his breach-of-contract claim.  Both Gilliland and the Defendants sign the Note, and the Defendants admit that the "copy of the Note attached to the Complaint is true and correct." Response at 6.  The Trust made disbursements under the Note but has not received any payments in return.  See Gilliland Decl.  ¶¶ 5-8, at 2.  These facts are sufficient to show that a contract exists between Gilliland and the Defendants, and that the Defendants breach the contract by not making payments towards the loan.  See Restatement (Second) of Contracts § 235 ("When performance of a duty under a contract is due any non-performance is a breach.").

Finally, the Defendants reference rule 56(d) of the Federal Rules of Civil Procedure, arguing that, because the Defendants need discovery to prove various contract defenses, the Court should deny the Rule 12(c) Motion until discovery has occurred.  See Rule 12(c) Response at 7. Rule 56(d) requires the nonmovant to show, however, "by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). The Defendants do not attach an affidavit or declaration to their Rule 12(c) Response.

Accordingly, they cannot invoke rule 56(d)'s protections.

**IT IS ORDERED** that: (i) the Defendants/Cross-Claimants' Motion to Disqualify Counsel for Plaintiff and Cross-Defendants, filed August 2, 2024 (Doc. 22), is denied; (ii) the Plaintiff's Motion for Judgment on the Pleadings or, In the Alternative, For Summary Judgment, filed April 10, 2024 (Doc. 10)("Rule 12(c) Motion"), is granted; (iii) the Defendants shall pay "the outstanding balance under the Note, contractual interest, post-judgment interest at the federal statutory rate, and reasonable attorneys' fees and costs," Rule 12(c) Motion at 12; and (iv) a separate Final Judgment will be entered in the Plaintiff's favor and against the Defendant.


_____
UNITED STATES DISTRICT JUDGE


*Counsel:*

David Richard Baake
Baake Law LLC
Las Cruces, New Mexico

     *Attorney for the Plaintiff*

Raul A. Carrillo, Jr.
Carrillo Law Firm P.C.
Las Cruces, New Mexico

     *Attorneys for the Defendants*

David Richard Baake
Baake Law LLC
Las Cruces, New Mexico

     *Attorney for the Cross-Claim Defendant*